JOPPA MATTRESS COMPANY v. ARKANSAS VALLEY COTTON OIL COMPANY.

Opinion delivered January 1, 1912.

1. FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM.—A contract of sale of chattels is not within the statute of frauds where its terms are witnessed by the letters of both parties. (Page 552.)

2. SALES OF CHATTELS—BREACH BY VENDOR—INSTRUCTION.—In an action by a vendee for breach of a contract of sale, an instruction that if the vendee had notice of the vendor's readiness to ship the articles sold and delayed for an unreasonable time, after having been requested to send shipping directions, the jury should find for the vendor, was erroneous in not allowing the jury to consider the vendee's request to know how long the vendor would hold the articles, to which request no reply was made. (Page 553.)

3. TRIAL—ABSTRACT INSTRUCTION.—In an action by a vendee for breach of a contract of sale, it was error to submit to the jury the question of an agreement on the vendee's part to take the chattels and pay for them on receipt of notice from the vendor or forfeit the contract when there was no testimony whatever as to any such agreement. (Page 553.)

4. SALES OF CHATTELS—RESCISSION—EFFECT.—Where a vendor elected to rescind a sale on account of the vendee's delay in giving shipping instructions, it is not entitled, in an action for breach of the contract, to recover damages incurred for storage and insurance while holding the property for delivery. (Page 554.)

Appeal from Yell Circuit Court, Dardanelle District; Hugh Basham, Judge; reversed.

STATEMENT BY THE COURT.

This was a suit for damages growing out of an alleged breach of a contract for the sale of fifty bales of cotton linters. It was alleged that plaintiff on the 4th day of October, 1909, purchased of the defendant fifty bales of lint cotton, known as linters, of five hundred pounds per bale, at the price of three cents per pound. That defendant, in violation of its contract, after demand of plaintiff for delivery, refused, on the 23d day of December, 1909, to deliver said linters, and that at said date of such refusal they were of the market value of four and a half cents per pound. Prayer for judgment for the difference in the sale and market price in the sum of three hundred and seventy-five dollars.

The defendants answered, denying all the material allegations of the complaint, and pleaded the statute of frauds. And

further that the plaintiff delayed an unreasonable time, after it was notified of defendant's readiness to deliver the cotton, to give shipping instructions and receive same, and it, on that account, rescinded the contract, as it had the right to do; and by way of counterclaim, asked $25 damages for insurance, and $12 additional for storage and $75 for damage to the linters on account of exposure to the weather during such delay.

The evidence shows the sale of fifty bales of linters at three cents per pound by the defendant company, which acknowledged on October 8, 1909, receipt of confirmation of the order therefor. Afterwards the following correspondence was had: The defendant company, on October 16, wrote to the plaintiff: "We express you today samples of the linters sold you October 4, 1909, and would be glad to ship them at once."

To which it replied on November 19, as follows: "Answering your favor of the 16th, beg to say that samples have not been received as yet. We were in hopes that we could have the fifty bales shipped to us by boat, and would thank you to hold these linters for a little while until the river rises sufficiently for a boat to bring the cotton down. Let us know how long you can hold these; and if the river does not rise in time, we will have them sent by rail. Will you have more linters to offer?"

Nothing further was said by either party until December 20, when plaintiff wrote: "We are now ready to have you ship the fifty bales of linters to us, and we want them to come by boat. We are this day writing to A. R. Bragg, manager of the packet company, to bring them down on the next trip of the boat. Get the bill of lading from the boat and draw on us, three days' sight."

Plaintiff company at the same time wrote to the manager of the boat line of the Arkansas River to get the bales of linters from defendant and bring them down.

On December 23d, the defendant company wrote plaintiff, as follows: "We have yours of the 20th inst., relative to the shipment of linters. You did not expect us to hold these linters all season, did you? We sold you this stuff in October, and expected to ship it out before the close of the season. We wrote you and expressed samples, and had very little satisfaction from you. About all we had was that you would ship on first boat. Several boats have landed at our wharf, and,

with no instructions, we took it for granted that you did not care to handle the linters, therefore we sold to parties giving prompt instructions."

To this letter plaintiff replied, expressing surprise at the sale of the linters, denying defendant's right to make it, and stating they would expect them to fill the order. Also stated that they had had no reply to their letter of November 19, requesting that the linters be held, or any notice that they would not be, and demanded the difference in price between the linters sold and the market of that day.

On January 5, plaintiff again wrote defendant, requesting an answer to their letter of the 24th, and advice as to whether it would fill the order for the linters, to which letter defendant replied that it had sold the linters in September, 1909, had confirmation of the sale on October 4, and replied thereto on the 8th, and, "We carried this as long as we thought it business to do so, and on November 16 we wrote you, asking for instructions. We have your letter dated November 19, 1909, asking us to hold these linters for a short time until you could give us instructions by boat. We had several boats and no instructions, and on December 23 we wrote you cancelling contract. We are not in the speculating business, and do not carry stocks for others without charge."

The manager of the defendant testified that the transaction was shown by the correspondence; that the linters were to be shipped as soon as made; that the samples were sent as indicated, and shipping instructions requested. That the linters would not stand the weather, and that they were turned and sunned, and that they had no place where they could store and keep them. That, on that account, they tried to sell a month ahead and move their linters as manufactured. That they also had to be insured, which was expensive. That plaintiff's letter, relative to shipping by boat, was not answered, and was satisfactory to the company. That they left the linters alone, and had one boat in a week or two afterwards, and wrote them about the boats, and had no instructions. He claimed that they received a letter in reply that unless a boat could be had in ten days shipping instructions by rail would be given. No notice was given that the linters would be held nor was any notice given that they would be sold; the first intimation the

plaintiff company had of the sale being from the defendant company's letter of December 23, in reply to its demand on the 20th for the shipment.

The assistant manager testified also to the making of the contract and the practice of the mill company to ship out the linters in accordance with their sales as early as possible to get them out of the way, and that it was necessary to sell ahead in order to save the expense of insuring and turning the linters over and taking care of them. That, after the receipt of the letter of the 19th requesting that the linters be held, "we held it and insured it, and the Joppa Mattress people kept waiting, and we knew it would damage, and we did not want a damage suit on our hands, and we did not think much they wanted it, and we sold it."

The court instructed the jury, declining to give any of the instructions requested by plaintiff, and giving, over its objections, instructions numbered 1 and 3, and one on its own .motion, as follows:

"If you find for the plaintiff, and you find from the evidence that the defendant was damaged by having to keep the linters from the time they were to have been delivered and paid for to the time of making demand on the defendant for their shipment, you will deduct such sums as the evidence shows defendant may.have been damaged by reason of such delay."

"You are instructed that, if you believe from the evidence that the defendant contracted to sell a certain quantity of linters to plaintiff during the season of 1909-1910 at a specified price, and, when called upon to deliver said linters during the season of 1910, defendant refused to do so, your verdict·will be for the plaintiff, unless you find that plaintiff delayed giving shipping instructions for an unreasonable length of time after receiving notice from defendant that linters were ready to be shipped, and you will assess the damages at a sum to represent the difference between the contract price and the market price of linters at Dardanelle at the time of such refusal, less expense of keeping and caring for linters, if any, after date of notice given to plaintiff that linters were ready for shipment.

The jury returned a verdict for the defendant, and from the judgment thereon plaintiff appealed.

*June P. Wooten,* for appellant; *Baldy Vinson,* of counsel.

The court erred in instructing the jury that, if appellant delayed shipping instructions for an unreasonable length of time after notice of appellee's readiness to ship, they should find for appellee. After the letter of November 19 to appellee in response to the notification by appellee of readiness to ship, and asking to be advised how long appellee could hold the linters, it was then not a question of reasonableness of time within which to give shipping instructions. It was incumbent on appellee to notify appellant that it was *at that time* ready to ship, and that it would not grant the request to hold the linters. 24 Am. & Eng. Enc. of L. 1077; 73 Fed. 606.

Even if it doubted appellant's performing its part of the contract, appellee had no authority to resell the linters without notifying appellant. 24 Am. & Eng. Enc. of L. 1140, and authorities cited; 55 Ark. 409.

Appellant's conduct at no time furnished ground for rescission of the contract. 24 Am & Eng. Enc. of L. (2 ed.) 1104.

*Bullock & Davis,* for appellee.

The statute of frauds applies in this case. The letters exhibited in evidence do not make a complete contract, and are insufficient to take the case out of the statute as a contract in writing. The correspondence does not fix the time for delivery or payment; the quantity of linters, their weight and segregation and quality are not described; and without oral testimony it is impossible to determine the amount and price. 1 Mechem on Sales, § 437, note 6 and authorities, cited; *Id.* § § 441, 443; 11 Enc. of Ev. 513, note.

The proof of damages is insufficient to entitle appellant to recover. 11 Enc. of Ev. 603, and note 59.

Kirby, J., (after stating the facts). The statute of frauds has no application to the case as made, since the letters of both parties recognize the contract of sale.

Appellant, having been advised of the forwarding of the samples and appellee's readiness to ship the linters at once, answered that the samples had not arrived, that they had hoped to have the linters shipped by boat, which was cheaper, and requested appellee to hold them for a little while until there

was a sufficient rise in the river to bring them down by boat; saying also: "Let us know how long you can hold these; and if the river does not rise in time, we will have them sent by rail." Appellee made no reply to this letter and request, nor at all, until it received appellant's letter of December 20, asking that the linters be shipped by boat, to which it replied in its letter of the 23d, saying: "We wrote you and expressed samples, and had very little satisfaction from you. About all we had was that you would ship on first boat. Several boats have landed at our wharf, and, with no instructions, we took it for granted that you did not care to handle the linters. Therefore, we sold to parties giving prompt instructions."

The court instructed the jury that if appellant had notice on October 16 of appellee's readiness to ship the linters at once, and that it had agreed to receive and ship the said linters and pay for them on receipt of such notice, or forfeit the said contract, and if they should find that it delayed the shipping instructions for an unreasonable time, after having been requested to send them, that it would find for the defendant.

This instruction was erroneous, because it did not allow the jury to take into consideration appellant's request for time after such notice that the linters might be delivered by boat, and also submitted to them the question of an agreement on its part to "take the said linters and pay for them on receipt of such notice, or forfeit the said contract," when there was no testimony whatever of any agreement for such forfeiture under any conditions.

Instruction numbered three and also the instruction given by the court, directing the jury to deduct from any damages they might find due the plaintiff because of the failure to deliver the linters in accordance with the terms of the contract any damages defendant suffered by keeping the linters from the time they were to have been delivered until the time of plaintiff's last demand for their shipment, or, as said in the last part of the court's instruction, "less expense of keeping and caring for the linters, if any, after date of notice given to plaintiff that linters were ready for shipment," were erroneous and should not have been given. The appellant was entitled to the delivery of the linters in accordance with the terms of the contract, and the appellee based its right to rescind the contract

upon appellant's unreasonable delay in giving shipping instructions, after it was notified that the linters were ready for delivery. It had the right to refuse to grant appellant any forbearance after its notice of its readiness to perform the contract, but delay on appellant's part, after requesting, on November 20, further time that the shipment might be made by boat and information as to how long appellee would hold the linters, with the statement that the linters would be shipped by rail, if the river did not rise sufficiently in that time, could not be treated as a breach of the contract on appellant's part without any notice from appellee until at least a reasonable time thereafter had expired, the delay being regarded as a forbearance merely pursuant to the request. There was no contention by appellee that it held the linters for delivery as requested and incurred damages on that account, but that it rescinded the contract, claiming it had the right to do so for appellant's failure to take and pay for the linters after notice that they were ready for delivery, and said instructions were erroneous, for, if it had the right to rescind the contract and declare it forfeited on that account as it attempted to do, then it was entitled to no damage whatever for insuring and taking care of the linters since it elected to rescind the sale for appellant's breach of the contract. *Phares* v. *Jaynes*, 94 S. W. (Mo. App.) 585; Sutherland on Damages, § 81.

The jury might have found under the instructions that appellant was damaged in a certain sum, and that appellee was damaged on these other items in a sum sufficient to equal the amount of damage sustained by appellant, and have returned the verdict it did on that account.

For the errors indicated the judgment is reversed, and the cause remanded for a new trial.

McCULLOCH, C. J., (dissenting). I do not think there was any error in giving the instructions complained of for it was the plaintiff's duty to give shipping directions within a reasonable time after being notified that the bales of linters were ready for shipment, otherwise the defendant had the right to act on the assumption that plaintiff had abandoned the contract. It was a question for the jury, under the circumstances of the case, to determine whether or not plaintiff had abandoned the contract by unreasonable delay in giving ship-

ping directions. It is said that the time for giving the shipping directions should run from the date of plaintiff's letter on November 19, 1909, asking for further time, and that the instruction was erroneous in ignoring that question. Plaintiff should have asked a modification to that effect, or a separate instruction covering that point. It did neither, but on the contrary asked an instruction to the effect that defendant had no right to resell without first notifying plaintiff. The linters remained the property of the defendant, and the contract was executory. The failure of plaintiff to give shipping directions within a reasonable time was an abandonment of the contract, and plaintiff had no right to sue for breach of a contract which it had abandoned.

It is manifest that the jury found against plaintiff as to its right to recover damages and the instruction as to the counterclaim for damages, even if erroneous, was not prejudicial.

The instructions were not, however, erroneous, for, if damages were sustained by defendant on account of plaintiff's failure to give shipping directions, such damages should have been deducted from the amount of damages recovered of plaintiff, if any.

The case was properly tried, I think, and resulted in a verdict which was amply sustained by the testimony.

HART, J., disqualified.